IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

ALLEN L. DAINS, on behalf of himself and all others similarly situated,

    Plaintiff,

vs.

GC SERVICES, L.P., a Texas Limited Partnership; and, JOHN AND JANE DOES NUMBERS 1 THROUGH 25,

    Defendants.

Case No.:

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

Plaintiff, ALLEN L. DAINS ("Plaintiff" or "DAINS"), on behalf of himself and all others similarly situated, brings this action for the illegal practices of Defendant, GC SERVICES, L.P. ("GC SERVICES"). In support of his Class Action Complaint, Plaintiff says:

1. Plaintiff, on his own behalf and on behalf of the class he seeks to represent, and demanding a trial by jury, brings this action for the illegal practices of GC SERVICES who used unfair, unconscionable, false, deceptive, and misleading practices, and other illegal practices, in connection with its attempts to collect alleged debts from the Plaintiff and others. Plaintiff alleges GC SERVICES's collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and Texas Debt Collection Practices Act, Tex. Fin. Code § 392, *et seq.* ("TDCPA").

2. Such collection practices include, *inter alia*, sending consumers written communications in an attempt to collect debts, which falsely state the consumers' alleged defaulted and charged-off debts are continuing to accrue daily interest, late charges, and other charges.

3. The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

4. The FDCPA is a strict liability statute which provides for actual or statutory damages upon the showing of one violation. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "unsophisticated debtor." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994).

5. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

6. The TDCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; *Cushman v. GC Services, L.P.*, 397 Fed.

Appx. 24 (5th Cir. 2010) (discussing the "tie-in" provision between the TDCPA and deceptive practices Acts).

7. Plaintiff, on behalf of himself and all others similarly situated, seeks statutory damages, injunctive relief, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, TDCPA, and all other common law or statutory regimes.

8. This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

## II. PARTIES

9. DAINS is a natural person.

10. At all times relevant to this complaint, DAINS has been a citizen of, and resided in, the City of Appleton, Outagamie County, Wisconsin.

11. At all times relevant to this complaint, GC SERVICES is a for-profit Limited Partnership existing pursuant to the laws of the State of Texas.

12. Plaintiff is informed and believes, and on that basis alleges, that GC SERVICES maintains its principal place of business at 6330 Gulfton, City of Houston, Harris County, Texas.

13. Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. The Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

14. The Plaintiff is informed and believes, and on that basis alleges, that Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are natural persons and/or business entities all of whom reside or are located within the United States who personally created,

3

instituted and, with knowledge that such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw the violative policies and procedures used by the employees of GC SERVICES that are the subject of this Complaint. Those Defendants personally control, and are engaged in, the illegal acts, policies, and practices utilized by GC SERVICES and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

### III. JURISDICTION & VENUE

15. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337.

16. Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

17. Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

18. Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because the Defendant is subject to personal jurisdiction in the State of Wisconsin at the time this action is commenced.

### IV. FACTS CONCERNING THE PARTIES

19. Plaintiff is alleged to have incurred and defaulted on a financial obligation to Citibank, N.A. ("Citibank Obligation").

20. The alleged Citibank Obligation arose out of a transaction in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

21. Plaintiff is informed and believes, and on that basis alleges, that in or about February 2016, the original creditor of the Citibank Obligation accelerated the debt and

demanded full payment at once, determined the debt was uncollectable, and then decided to "charge-off" the debt.

22. Creditors charge-off defaulted debts in accordance with federal regulations that require the creditor to remove the debt from their financial statements as assets. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

23. GC SERVICES contends the Citibank Obligation is in default.

24. The alleged Citibank Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

25. The alleged Citibank Obligation is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

26. Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

27. Plaintiff is, at all times relevant to this complaint, a "consumer" as that term is defined by Tex. Fin. Code § 392.001(1).

28. Plaintiff is informed and believes, and on that basis alleges, that sometime prior to August 31, 2016, the creditor of the Citibank Obligation either directly or through intermediate transactions assigned, placed, or transferred the debt to GC SERVICES for collection.

29. GC SERVICES is a company that collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

30. GC SERVICES is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

31. GC SERVICES is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

32. GC SERVICES is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

33. GC SERVICES is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

34. On or about August 31, 2016, GC SERVICES mailed a collection letter to Plaintiff concerning the Citibank Obligation, which was dated August 31, 2016, and which Plaintiff received in the ordinary course of mail. ("8/31/2016 Letter"). A true and correct copy of the 8/31/2016 Letter is attached hereto as ***Exhibit A***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers and Plaintiff's home address to protect Plaintiff's privacy.

35. The 8/31/2016 Letter was mailed, or caused to be mailed, to Plaintiff by persons employed by GC SERVICES as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

36. The 8/31/2016 Letter was sent to Plaintiff in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

37. The 8/31/2016 Letter was sent to Plaintiff in connection with the collection of a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

38. The 8/31/2016 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

39. The 8/31/2016 Letter GC SERVICES states, "BALANCE DUE: $1,386.76."

40. The bottom of the front page of the 8/31/2016 Letter contains the following disclaimer:

> As of the date of this letter, you owe $1,386.76. Because of interest, late charges and other charges that may vary from

> day to day, the amount due on the day you pay may be greater.

41. On or about September 30, 2016, GC SERVICES mailed a second collection letter to Plaintiff concerning the Citibank Obligation, which was dated September 30, 2016, and which Plaintiff received in the ordinary course of mail. ("9/30/2016 Letter"). A true and correct copy of the 9/30/2016 Letter is attached hereto as ***Exhibit B***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers and Plaintiff's home address to protect Plaintiff's privacy.

42. The 9/30/2016 Letter was mailed, or caused to be mailed, to Plaintiff by persons employed by GC SERVICES as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

43. The 9/30/2016 Letter was sent to Plaintiff in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

44. The 9/30/2016 Letter was sent to Plaintiff in connection with the collection of a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

45. The 9/30/2016 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

46. The 9/30/2016 Letter GC SERVICES states, "NEW BALANCE: $1,386.76."

47. The bottom of the front page of the 9/30/2016 Letter again contains the following disclaimer:

> As of the date of this letter, you owe $1,386.76. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.

48. On or about October 30, 2016, GC SERVICES mailed a third collection letter to Plaintiff concerning the Citibank Obligation, which was dated October 30, 2016, and which Plaintiff received in the ordinary course of mail. ("10/30/2016 Letter"). A true and correct copy of the 10/30/2016 Letter is attached hereto as ***Exhibit C***, except that the undersigned counsel has,

in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers and Plaintiff's home address to protect Plaintiff's privacy.

49. The 10/30/2016 Letter was mailed, or caused to be mailed, to Plaintiff by persons employed by GC SERVICES as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

50. The 10/30/2016 Letter was sent to Plaintiff in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

51. The 10/30/2016 Letter was sent to Plaintiff in connection with the collection of a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

52. The 10/30/2016 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

53. The 10/30/2016 Letter GC SERVICES states, "MINIMUM PAYMENT DUE: $1,386.76."

54. The bottom of the front page of the 10/30/2016 Letter again contains the following disclaimer:

> As of the date of this letter, you owe $1,386.76. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.

55. The 10/30/2016 Letter GC SERVICES falsely states, "MINIMUM PAYMENT DUE: $1,386.76" when, in fact, that is the total amount due that will ever be sought for the Citibank Obligation.

56. Plaintiff is informed and believes, and on that basis alleges, the creditor of the Citibank Obligation may not legally impose interest on the debt GC SERVICES sought to collect from Plaintiff.

57. The creditor of the Citibank Obligation does not, and will not, add interest to the debt GC SERVICES sought to collect from Plaintiff.

58. The creditor of the Citibank Obligation may not legally or contractually impose late charges on the debt GC SERVICES sought to collect from Plaintiff.

59. The creditor of the Citibank Obligation does not, and will not, add late charges to the debt GC SERVICES sought to collect from Plaintiff.

60. The creditor of the Citibank Obligation may not legally or contractually impose other charges on the debt GC SERVICES sought to collect from Plaintiff.

61. The creditor of the Citibank Obligation does not, and will not, add other charges to the debt GC SERVICES sought to collect from Plaintiff.

62. The disclaimers on *Exhibits A, B,* and *C* are materially false, deceptive, and misleading in that, *inter alia*, they falsely suggest to unsophisticated consumers that the amount of their debts will increase *daily* due to an undisclosed amount of "interest, late charges, and other charges" that "vary from day to day."

63. The disclaimers on *Exhibits A, B,* and *C* are materially false, deceptive, and misleading in that, *inter alia*, they state the consumer will, as a consequence, owe an additional undisclosed sum of money after payment is tendered to GC SERVICES.

64. The *Exhibits A, B,* and *C* Letter collection caused Plaintiff uncertainty and forced him to guess how much money he allegedly owed GC SERVICES, how much money would accrue daily on his alleged debt, how much additional money he would owe if she paid the amount demanded, and if/when GC SERVICES's collection efforts would actually stop if he remitted the entire payment demanded.

65. *Exhibits A, B,* and *C* would cause unsophisticated consumers uncertainty and force him/her to guess how much money s/he allegedly owed GC SERVICES, how much money would accrue daily on his/her alleged debt, how much additional money s/he would owe if they paid the amount demanded in *Exhibits A, B,* and *C*, and if/when GC SERVICES's collection

-9-
Case 1:16-cv-01641-WCG   Filed 12/12/16   Page 9 of 17   Document 1

efforts would actually stop if s/he remitted the entire payment demanded.

66. GC SERVICES intended that its materially false statements contained in *Exhibits A, B,* and *C* cause Plaintiff and other unsophisticated consumers confusion about the exact amount of money allegedly owed.

67. GC SERVICES intended that its materially false and deceptive statements contained in *Exhibits A, B,* and *C* cause Plaintiff and other similarly situated consumers to incorrectly believe they would benefit financially by immediately sending payment for the amount demanded rather than waiting to make such payment.

## V. POLICIES AND PRACTICES COMPLAINED OF

68. It is GC SERVICES's policy and practice to engage in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692g(a)(1), as well as Tex. Fin. Code §§ 392.304(a)(8), 392.304(a)(12), 392.304(a)(13), and § 392.304(a)(19).

69. On information and belief GC SERVICES' collection letters, in the form attached as *Exhibits A, B* and *C*, were mailed to hundreds of consumers who are similarly situated with Plaintiff.

## VI. CLASS ACTION ALLEGATIONS

70. Plaintiff brings this claim on behalf of one class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) and (3).

71. With respect to the First Class, this claim is brought on behalf of a class of (a) all persons with addresses in the State of Wisconsin (b) to whom GC SERVICES mailed an initial written communication materially similar to the form attached as *Exhibit A*; (c) in an attempt to collect a debt that was charged-off by the original creditor prior to the date the letter was sent to the consumer; (d) which was not returned as undelivered by the United States Postal Service; (e)

which stated, "because of interest, late charges and other charges that may be assessed by your creditor that vary from day to day, the amount due on the day you pay, may be greater" and the amount did not increase in the next collection letter; (f) and which was sent on or after a date two years prior to the filing of this action and on or before a date 21 days thereafter.

72. With respect to the First Class, this claim is brought on behalf of a sub-class of all persons who meet the class definition set forth, *supra*, during the one-year period prior to the filing of this action and on or before a date 21 days thereafter.

73. With respect to the Second Class, this claim is brought on behalf of a class of (a) all persons with addresses in the State of Wisconsin (b) to whom GC SERVICES mailed a written collection letter materially similar to the form attached as ***Exhibits A, B,*** and ***C***; (c) in an attempt to collect a debt that was charged-off by the original creditor prior to the date the letter was sent to the consumer; (d) which was not returned as undelivered by the United States Postal Service; (e) which letter stated, "because of interest, late charges and other charges that may be assessed by your creditor that vary from day to day, the amount due on the day you pay, may be greater" and the amount did not increase in the next collection letter; (f) and which letter was sent on or after a date two years prior to the filing of this action and on or before a date 21 days thereafter.

74. With respect to the Second Class, this claim is brought on behalf of a sub-class of all persons who meet the class definition set forth, *supra*, during the one-year period prior to the filing of this action and on or before a date 21 days thereafter.

75. The identities of all class members are readily ascertainable from the records of GC SERVICES and Citibank, N.A.

76. Excluded from the Class are GC SERVICES and each of its officers, members, partners, managers, directors, and employees and their respective immediate families, and legal

counsel for all parties to this action and all members of their immediate families.

77. There are questions of law and fact common to the First Class and its Sub-Class, which common issues predominate over any issues involving only individual class members. The principal issue is whether GC SERVICES's initial written communications to consumers, in the form attached as *Exhibit A*, violates 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692g(a)(1), as well as Tex. Fin. Code §§ 392.304(a)(8), 392.304(a)(12), 392.304(a)(13), and § 392.304(a)(19).

78. There are questions of law and fact common to the Second Class and its Sub-Class, which common issues predominate over any issues involving only individual class members. The principal issue is whether GC SERVICES's initial written communications to consumers, in the form attached as *Exhibit A*, violates 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692g(a)(1), as well as Tex. Fin. Code §§ 392.304(a)(8), 392.304(a)(12), 392.304(a)(13), and § 392.304(a)(19).

79. The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

80. The Plaintiff will fairly and adequately protect the interests of the Classes and Sub-Classes defined in this complaint. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause them not to vigorously pursue this action.

81. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    (a) **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Classes and Sub-Classes defined above are so numerous that joinder of all

members would be impractical.

(c) **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Classes and Sub-Classes, which predominate over any questions or issues involving only individual class members. The principal issue is whether GC SERVICES's standardized, computer-generated, collection letters that it sends to consumers, in the form attached as *Exhibits A, B* and *C* violate 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692g(a)(1), as well as Tex. Fin. Code §§ 392.304(a)(8), 392.304(a)(12), 392.304(a)(13), and § 392.304(a)(19).

(d) **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Classes and Sub-Classes have claims arising out of GC SERVICES's common uniform course of conduct complained of herein.

(e) **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

(f) **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

82. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Classes and Sub-Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

83. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of his class certification motion: (i) seek to modify the definitions of the Classes and Sub-Classes (defined *supra*) to be more inclusive or less inclusive; seek to modify the definition of the Class claims (defined *supra*) to be more inclusive or less inclusive; and/or (iii) seek certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## VII. FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST ALL DEFENDANTS)

84. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

85. GC SERVICES violated the FDCPA. GC SERVICES's violations, with respect to its written communications in the form attached as ***Exhibits A, B*** and ***C*** include, but are not limited to:

    (a) Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

    (b) Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

    (c) Making false, deceptive, and misleading representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. § 1692e(2)(B);

(d) Making false threats to take action that cannot legally be taken and/or that is not intended to be taken in violation of 15 U.S.C. §§ 1692e and 1692e(5);

(e) Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and

(f) Failing to provide the amount of the debt in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692g(a)(1).

## VIII. SECOND CAUSE OF ACTION
### VIOLATIONS OF THE TEXAS DEBT COLLECTION PRACTICES ACT
### (AGAINST ALL DEFENDANTS)

86. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

87. GC SERVICES violated Tex. Fin. Code § 392.304(a)(8) by making false, deceptive, and misleading statements regarding the character and extent of the debt it sought to collect.

88. GC SERVICES violated Tex. Fin. Code § 392.304(a)(12) by making false, deceptive, and misleading statements that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges that are not authorized by the agreement creating the obligation or legally chargeable to the consumer.

89. GC SERVICES violated Tex. Fin. Code § 392.304(a)(13) by making false, deceptive, and misleading statements that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges when the award of the fees or charges is subject to judicial discretion.

90. GC SERVICES violated Tex. Fin. Code § 392.304(a)(19) by using false, deceptive, and misleading representations and/or deceptive means to collect or attempt to collect any debt or

to obtain information concerning a consumer.

## IX. PRAYER FOR RELIEF

91. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and in favor of the Classes and Sub-Classes as follows:

**A.     For the FIRST CAUSE OF ACTION:**

(i) An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the First and Second Classes and Sub-Classes previously set forth and defined *supra*;

(ii) An award of statutory damages for Plaintiff and the First and Second Classes and Sub-Classes pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(iii) Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(iv) For such other and further relief as may be just and proper.

**B.     For the SECOND CAUSE OF ACTION:**

(i) An order certifying that the Second Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and Tex. Fin. Code § 392.403(a), and appointing Plaintiff and the undersigned counsel to represent the First and Second Classes and Sub-Classes previously set forth and defined above.

(ii) For injunctive relief for Plaintiff and the First and Second Classes pursuant to Tex. Fin. Code § 392.403(a)(1), including enjoining GC SERVICES from engaging in further violations of Chapter 392 of the Texas Finance Code as complained of herein;

(iii) For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudicating that GC SERVICES's collection conduct complained of violates the violates the TDCPA;

(iv) Attorney's fees, litigation expenses, and costs pursuant to Tex. Fin. Code § 392.403(b); and

(v) For such other and further relief as may be just and proper.

## X. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

Respectfully submitted this 12th Day of December 2016

*s/ Heather B. Jones*
Heather B. Jones, Esq.
Philip D. Stern, Esq.
Andrew T. Thomasson, Esq.
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1329
Telephone: (973) 379-7500
Facsimile: (973) 532-5868
E-Mail: heather@sternthomasson.com

Daniel A. Edelman, Esq.
Francis R. Greene, Esq.
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603
Telephone: (312) 917-4500
Facsimile: (312) 419-0379
E-Mail: dedelman@edcombs.com
E-Mail: fgreene@edcombs.com

*Attorneys for Plaintiff, Allen L. Dains, and all others similarly situated*